# TX RE Opportunity Fund LLC

December 13, 2017

Terry Fisher
Owner (terry.fisher45@yahoo.com)
832 Yale St
Houston, TX 77007

Re:   **Summary of Offer to Purchase Five Units at 2020 McGowen**

Terry:

TX RE Opportunity Fund LLC and / or assigned entity hereby extend an offer to purchase the above described property under the following conditions:

| | |
|---|---|
| **Property:** | The land, buildings, personal property, leases and contracts comprising five units at 2020 McGowen, Houston, Texas 77004, a 23 unit town home complex. The five residential homes to be acquired are Lot(s) 13 through 17, in Block 1 of Viewpoint Square Replat No. 2, a subdivision in Harris county, Texas according to the map or plat thereof recorded in Film Code No. 674645 of the Map and/or Plat Records of Harris county, Texas. |
| **Seller:** | 2020 McGowen LLC or its assigned. |
| **Purchaser:** | TX RE Opportunity Fund LLC or its assigned. |
| **Purchase Price:** | **Total consideration of Nine Hundred, Twenty-Five Thousand dollars ($925,000.00)** |
| **Earnest Money:** | N/A |
| **Inspections:** | None. Acquiring the Property As-Is |
| **Closing:** | Closing shall be set on or before December 28, 2017<br><br>Seller shall deliver property free and clear of any and all liens or unencumbered and any defeasances and costs shall be borne by seller. |
| **Closing Costs:** | Seller shall pay for the title policy, the survey, deed recording fees, and ½ of fees charged by the title company. Purchaser shall pay for any mortgagee title policy (if necessary), plus any additional premiums for other endorsements, and ½ of the fees charged by the Title Company. Each party shall be responsible for their own cost of counsel. |
| **Prorations:** | Rents, property taxes, and other operating expenses shall be apportioned to the Properties as of the day of Closing, with the Purchaser being vested in title for the entire day of Closing. All security deposits held by Seller shall be transferred to Purchaser at Closing. |
| **Special Provisions** | Seller shall complete the common driveway for the entire complex within 30 days after closing of this transaction. |

This letter sets out the principal business terms of the purchase transactions.

Signature by the Seller in the space provided will indicate acceptance of the terms and conditions expressed herein. Return of an executed counterpart to this letter will constitute authorization for the Purchaser and Seller to proceed to the fruition of the purchase and sale of the properties.

Respectfully submitted:  TX RE Opportunity Fund LLC

*/s/ Brad Parker*

By:    Brad Parker
Title: Authorized Agent

Accepted:

_____

By:     _____
Name:  _____
Title:  _____
Date:  _____



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)   11-2-2015
# NEW HOME CONTRACT
(Completed Construction)
NOTICE: Not For Use For Condominium Transactions or Closings Prior to Completion of Construction



1. **PARTIES:** The parties to this contract are 2020 McGowen LLC (Seller) and TX RE Opportunity Fund LLC (Buyer). Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

2. **PROPERTY:** Lot 13 thru 17, Block 1, Viewpoint Square Replat No. 2 Addition, City of Houston, County of Harris, Texas, known as 2020 McGowen St. Units T, U, V, W Houston, TX 77004 (address/zip code), or as described on attached exhibit, together with: (i) improvements, fixtures and all other property located thereon; and (ii) all rights, privileges and appurtenances thereto, including but not limited to: permits, easements, and cooperative and association memberships. All property sold by this contract is called the "Property".

3. **SALES PRICE:**
   A. Cash portion of Sales Price payable by Buyer at closing ........................ $ 925,000.00
   B. Sum of all financing described in the attached: ☐ Third Party Financing Addendum, ☐ Loan Assumption Addendum, ☐ Seller Financing Addendum ...... $ 0
   C. Sales Price (Sum of A and B) ............................................................. $ 925,000.00

4. **LICENSE HOLDER DISCLOSURE:** Texas law requires a real estate license holder who is a party to a transaction or acting on behalf of a spouse, parent, child, business entity in which the license holder owns more than 10%, or a trust for which the license holder acts as trustee or of which the license holder or the license holder's spouse parent or child is a beneficiary, to notify the other party in writing before entering into a contract of sale. Disclose if applicable: N/A

5. **EARNEST MONEY:** Upon execution of this contract by all parties, Buyer shall deposit $ 10,000.00 as earnest money with 2 business days, as escrow agent, at Exodus Title (address). Buyer shall deposit additional earnest money of $ N/A with escrow agent within N/A days after the effective date of this contract. If Buyer fails to deposit the earnest money as required by this contract, Buyer will be in default.

6. **TITLE POLICY AND SURVEY:**
   A. TITLE POLICY: Seller shall furnish to Buyer at ☒Seller's ☐Buyer's expense an owner policy of title insurance (Title Policy) issued by Exodus Title (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:
      (1) Restrictive covenants common to the platted subdivision in which the Property is located.
      (2) The standard printed exception for standby fees, taxes and assessments.
      (3) Liens created as part of the financing described in Paragraph 3.
      (4) Utility easements created by the dedication deed or plat of the subdivision in which the Property is located.
      (5) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.
      (6) The standard printed exception as to marital rights.
      (7) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.
      (8) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvement: ☒ (i) will not be amended or deleted from the title policy; or ☐(ii) will be amended to read, "shortages in area" at the expense of ☐Buyer ☐Seller.
   B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If, due to factors beyond Seller's control, the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

Initialed for identification by Buyer_____ _____ and Seller _____ _____    TREC NO. 24-14

Contract Concerning _____2020 McGowen_____ Page 2 of 9   11-2-2015
(Address of Property)

C. **SURVEY:** The survey must be made by a registered professional land surveyor acceptable to the Title Company and Buyer's lender(s). (Check one box only)
- ☐ (1) Within _____ days after the effective date of this contract, Seller shall furnish to Buyer and Title Company Seller's existing survey of the Property and a Residential Real Property Affidavit promulgated by the Texas Department of Insurance (T-47 Affidavit). **If Seller fails to furnish the existing survey or affidavit within the time prescribed, Buyer shall obtain a new survey at Seller's expense no later than 3 days prior to Closing Date.** If the existing survey or affidavit is not acceptable to Title Company or Buyer's lender(s), Buyer shall obtain a new survey at ☐ Seller's ☐ Buyer's expense no later than 3 days prior to Closing Date.
- ☑ (2) Within __5__ days after the effective date of this contract, Buyer shall obtain a new survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier.
- ☐ (3) Within _____ days after the effective date of this contract, Seller, at Seller's expense shall furnish a new survey to Buyer.

D. **OBJECTIONS:** Buyer may object in writing to defects, exceptions, or encumbrances to title: disclosed on the survey other than items 6A(1) through (7) above; disclosed in the Commitment other than items 6A(1) through (8) above; or which prohibit the following use or activity: _Buying As-is where-is_____
_____.
Buyer must object the earlier of (i) the Closing Date or (ii) _____ days after Buyer receives the Commitment, Exception Documents, and the survey. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated to incur any expense, Seller shall cure the timely objections of Buyer or any third party lender within 15 days after Seller receives the objections and the Closing Date will be extended as necessary. If objections are not cured within such 15 day period, this contract will terminate and the earnest money will be refunded to Buyer unless Buyer waives the objections.

E. **TITLE NOTICES:**
- (1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.
- (2) MEMBERSHIP IN PROPERTY OWNERS ASSOCIATION(S): The Property ☐ is ☑ is not subject to mandatory membership in a property owners association(s). If the Property is subject to mandatory membership in a property owners association(s), Seller notifies Buyer under §5.012, Texas Property Code, that, as a purchaser of property in the residential community identified in Paragraph 2A in which the Property is located, you are obligated to be a member of the property owners association(s). Restrictive covenants governing the use and occupancy of the Property and all dedicatory instruments governing the establishment, maintenance, and operation of this residential community have been or will be recorded in the Real Property Records of the county in which the Property is located. Copies of the restrictive covenants and dedicatory instruments may be obtained from the county clerk. **You are obligated to pay assessments to the property owners association(s). The amount of the assessments is subject to change. Your failure to pay the assessments could result in enforcement of the association's lien on and the foreclosure of the Property.** Section 207.003, Property Code, entitles an owner to receive copies of any document that governs the establishment, maintenance, or operation of a subdivision, including, but not limited to, restrictions, bylaws, rules and regulations, and a resale certificate from a property owners' association. A resale certificate contains information including, but not limited to, statements specifying the amount and frequency of regular assessments and the style and cause number of lawsuits to which the property owners' association is a party, other than lawsuits relating to unpaid ad valorem taxes of an individual member of the association. These documents must be made available to you by the property owners' association or the association's agent on your request.
**If Buyer is concerned about these matters, the TREC promulgated Addendum for Property Subject to Mandatory Membership in a Property Owners Association should be used.**
- (3) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.
- (4) TIDE WATERS: If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.

Initialed for identification by Buyer _____ _____ and Seller _____ _____   TREC NO. 24-14

Contract Concerning _____2020 McGowen_____ Page 3 of 9   11-2-2015
(Address of Property)

 (5) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

 (6) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

 (7) PUBLIC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district, §5.014, Property Code, requires Seller to notify Buyer as follows: As a purchaser of this parcel of real property you are obligated to pay an assessment to a municipality or county for an improvement project undertaken by a public improvement district under Chapter 372, Local Government Code. The assessment may be due annually or in periodic installments. More information concerning the amount of the assessment and the due dates of that assessment may be obtained from the municipality or county levying the assessment. The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of your property.

 (8) TRANSFER FEES: If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows: The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

 (9) PROPANE GAS SYSTEM SERVICE AREA: If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code. An addendum containing the notice approved by TREC or required by the parties should be used.

 (10) NOTICE OF WATER LEVEL FLUCTUATIONS: If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

**7. PROPERTY CONDITION:**

 A. ACCESS, INSPECTIONS AND UTILITIES: Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect.

 B. ACCEPTANCE OF PROPERTY CONDITION: "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7B(1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.
(Check one box only)
☒ (1) Buyer accepts the Property As Is.
☐ (2) Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: _____

(Do not insert general phrases, such as "subject to inspections," that do not identify specific repairs and treatments.)

 C. WARRANTIES: Except as expressly set forth in this contract, a separate writing, or provided by law, Seller makes no other express warranties. Seller shall assign to Buyer at closing all assignable manufacturer warranties.

Initialed for identification by Buyer_____   _____ and Seller _____   _____     TREC NO. 24-14

Contract Concerning _____ 2020 McGowen _____ Page 4 of 9   11-2-2015
(Address of Property)

D. **INSULATION:** As required by Federal Trade Commission Regulations, the information relating to the insulation installed or to be installed in the Improvements at the Property is: (check only one box below)
☐ (1) as shown in the attached specifications.
☐ (2) as follows:
(a) Exterior walls of improved living areas: insulated with _____ insulation to a thickness of _____ inches which yields an R-Value of _____.
(b) Walls in other areas of the home: insulated with _____ insulation to a thickness of _____ inches which yields an R-Value of _____.
(c) Ceilings in improved living areas: insulated with _____ insulation to a thickness of _____ inches which yields an R-Value of _____.
(d) Floors of improved living areas not applied to a slab foundation: insulated with _____ insulation to a thickness of _____ inches which yields an R-Value of _____.
(e) Other insulated areas: insulated with _____ insulation to a thickness of _____ inches which yields an R-Value of _____.
All stated R-Values are based on information provided by the manufacturer of the insulation.
E. **LENDER REQUIRED REPAIRS AND TREATMENTS:** Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.
F. **COMPLETION OF REPAIRS, TREATMENTS, AND IMPROVEMENTS:** Unless otherwise agreed in writing: (i) Seller shall complete all agreed repairs, treatments, and improvements (Work) prior to the Closing Date; and (ii) all required permits must be obtained, and Work must be performed by persons who are licensed to provide such Work or, if no license is required by law, are commercially engaged in the trade of providing such Work. At Buyer's election, any transferable warranties received by Seller with respect to the Work will be transferred to Buyer at Buyer's expense. If Seller fails to complete any agreed Work prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for Seller to complete Work.
G. **ENVIRONMENTAL MATTERS:** Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.
H. **SELLER'S DISCLOSURE:** Except as otherwise disclosed in this contract, Seller has no knowledge of the following:
(1) any flooding of the Property which has had a material adverse effect on the use of the Property;
(2) any pending or threatened litigation, condemnation, or special assessment affecting the Property;
(3) any environmental hazards that materially and adversely affect the Property;
(4) any dumpsite, landfill, or underground tanks or containers now or previously located on the Property;
(5) any wetlands, as defined by federal or state law or regulation, affecting the Property; or
(6) any threatened or endangered species or their habitat affecting the Property.
I. **RESIDENTIAL SERVICE CONTRACTS:** Buyer may purchase a residential service contract from a residential service company licensed by TREC. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $_____0.00_____. Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. **The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.**

8. **BROKERS' FEES:** All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

9. **CLOSING:**
A. The closing of the sale will be on or before _____December 28_____, 20__17__, or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.
B. At closing:
(1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the Property.
(2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.
(3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits,

Initialed for identification by Buyer_____ _____ and Seller _____ _____   TREC NO. 24-14

| Contract Concerning | 2020 McGowen | Page 5 of 9   11-2-2015 |
|---|---|---|
| | (Address of Property) | |

releases, loan documents and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.

(4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.

## 10. POSSESSION:

A. Buyer's Possession: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☑ upon closing and funding ☐ according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. **Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.**

B. Leases: After the Effective Date, Seller may not execute any lease (including but not limited to mineral leases) or convey any interest in the Property without Buyer's written consent.

## 11. SPECIAL PROVISIONS: (Insert only factual statements and business details applicable to the sale. TREC rules prohibit license holders from adding factual statements or business details for which a contract addendum, lease or other form has been promulgated by TREC for mandatory use.)

SELLER TO COMPLETE THE COMMON DRIVEWAY FOR THE ENTIRE DEVELOPMENT WITHIN 30 DAYS OF CLOSING

SUBJECT TO BANKRUPTCY APPROVAL IN RE 2020 MCGOWEN CASE NUMBER 17-32788

## 12. SETTLEMENT AND OTHER EXPENSES:

A. The following expenses must be paid at or prior to closing:
 (1) Expenses payable by Seller (Seller's Expenses):
  (a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.
  (b) Seller shall also pay an amount not to exceed $ _____0.00____ to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.
 (2) Expenses payable by Buyer (Buyer's Expenses): Appraisal fees; loan application fees; origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other expenses payable by Buyer under this contract.

B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

## 13. PRORATIONS AND ROLLBACK TAXES:

A. PRORATIONS: Taxes for the current year, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer will be obligated to pay taxes for the current year.

B. ROLLBACK TAXES: If additional taxes, penalties, or interest (Assessments) are imposed because of Seller's use or change in use of the Property prior to closing, the Assessments will be the obligation of Seller. Obligations imposed by this paragraph will survive closing.

## 14. CASUALTY LOSS:

If any part of the Property is damaged or destroyed by fire or other casualty after the effective date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds, if permitted by Seller's insurance carrier, and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

Initialed for identification by Buyer _____ _____ and Seller _____ _____   TREC NO. 24-14

Contract Concerning _____ 2020 McGowen _____ Page 6 of 9   11-2-2015
(Address of Property)

**15. DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

**16. MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Subject to applicable law, any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

**17. ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

**18. ESCROW:**
   A. ESCROW: The escrow agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent.
   B. EXPENSES: At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, escrow agent may: (i) require a written release of liability of the escrow agent from all parties, (ii) require payment of unpaid expenses incurred on behalf of a party, and (iii) only deduct from the earnest money the amount of unpaid expenses incurred on behalf of the party receiving the earnest money.
   C. DEMAND: Upon termination of this contract, either party or the escrow agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the escrow agent. If either party fails to execute the release, either party may make a written demand to the escrow agent for the earnest money. If only one party makes written demand for the earnest money, escrow agent shall promptly provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.
   D. DAMAGES: Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.
   E. NOTICES: Escrow agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

**19. REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

**20. FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by applicable law, or if Seller fails to deliver an affidavit to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

**21. NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by fax or electronic transmission as follows:

| **To Buyer at:** | 1614 SIDNEY BAKER ST | **To Seller at:** | |
|---|---|---|---|
| | Kerrville, TX 78028 | | |
| Phone: | ( ) | Phone: | ( ) |
| Fax: | ( ) | Fax: | ( ) |
| E-mail: | | E-mail: | |

Initialed for identification by Buyer _____ _____ and Seller _____ _____   TREC NO. 24-14

Contract Concerning _____ 2020 McGowen _____ Page 7 of 9   11-2-2015
(Address of Property)

**22. AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (check all applicable boxes):

- ❑ Third Party Financing Addendum
- ❑ Seller Financing Addendum
- ❑ Addendum for Property Subject to Mandatory Membership in a Property Owners Association
- ❑ Buyer's Temporary Residential Lease
- ❑ Loan Assumption Addendum
- ❑ Addendum for Sale of Other Property by Buyer
- ❑ Addendum for Reservation of Oil, Gas and Other Minerals
- ❑ Addendum for "Back-Up" Contract

- ❑ Addendum for Coastal Area Property
- ❑ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum
- ❑ Seller's Temporary Residential Lease
- ❑ Short Sale Addendum
- ❑ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway
- ❑ Addendum for Property in a Propane Gas System Service Area
- ❑ Other (list): _____

**23. TERMINATION OPTION:** For nominal consideration, the receipt of which is hereby acknowledged by Seller, and Buyer's agreement to pay Seller $_____0.00_____ (Option Fee) within 3 days after the effective date of this contract, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within ___N/A___ days after the effective date of this contract (Option Period). Notices under this paragraph must be given by 5:00 p.m. (local time where the Property is located) by the date specified. If no dollar amount is stated as the Option Fee or if Buyer fails to pay the Option Fee to Seller within the time prescribed, this paragraph will not be a part of this contract and Buyer shall not have the unrestricted right to terminate this contract. If Buyer gives notice of termination within the time prescribed, the Option Fee will not be refunded; however, any earnest money will be refunded to Buyer. The Option Fee ❑ will ❑ will not be credited to the Sales Price at closing. **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

**24. CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate license holders from giving legal advice. READ THIS CONTRACT CAREFULLY.

Buyer's
Attorney is: _____

Seller's
Attorney is: _____

Phone: ( ) _____

Phone: ( ) _____

Fax: ( ) _____

Fax: ( ) _____

E-mail: _____

E-mail: _____

Initialed for identification by Buyer _____ _____ and Seller _____ _____    TREC NO. 24-14

Contract Concerning _____ 2020 McGowen _____ Page 8 of 9   11-2-2015
(Address of Property)

**EXECUTED the _____ day of _____, 20____ (EFFECTIVE DATE).**
**(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)**

This contract is subject to Chapter 27 of the Texas Property Code. The provisions of that chapter may affect your right to recover damages arising from a construction defect. If you have a complaint concerning a construction defect and that defect has not been corrected as may be required by law or by contract, you must provide the notice required by Chapter 27 of the Texas Property Code to the contractor by certified mail, return receipt requested, not later than the 60th day before the date you file suit to recover damages in a court of law or initiate arbitration. The notice must refer to Chapter 27 of the Texas Property Code and must describe the construction defect. If requested by the contractor, you must provide the contractor an opportunity to inspect and cure the defect as provided by Section 27.004 of the Texas Property Code.

_____
Buyer

_____
Buyer

_____
Seller

_____
Seller



The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 24-14. This form replaces TREC NO. 24-13.

TREC NO. 24-14

Contract Concerning _____2020 McGowen_____ Page 9 of 9    11-2-2015
(Address of Property)

## BROKER INFORMATION
(Print name(s) only. Do not sign)

| N/A | | N/A | |
|---|---|---|---|
| Other Broker Firm | License No. | Listing Broker Firm | License No. |

represents  ☐ Buyer only as Buyer's agent              represents  ☐ Seller and Buyer as an intermediary
☐ Seller as Listing Broker's subagent                            ☐ Seller only as Seller's agent

Associate's Name                                License No.     Associate's Name                              License No.

Licensed Supervisor of Associate     License No.     Licensed Supervisor of Listing Associate     License No.

Other Broker's Address                          Fax                  Listing Broker's Office Address                  Fax

City                          State                      Zip              City                            State                      Zip

Associate's Email Address                 Phone              Listing Associate's Email Address          Phone

Selling Associate's Name                                          License No.

Licensed Supervisor of Selling Associate                License No.

Selling Associate's Office Address                             Fax

City                            State                      Zip

Selling Associate's Email Address                             Phone

Listing Broker has agreed to pay Other Broker_____ of the total sales price when the Listing Broker's fee is received. Escrow agent is authorized and directed to pay other Broker from Listing Broker's fee at closing.

## OPTION FEE RECEIPT

Receipt of $_____ (Option Fee) in the form of _____ is acknowledged.

_____              _____
Seller or Listing Broker                                    Date

## CONTRACT AND EARNEST MONEY RECEIPT

Receipt of ☐Contract and ☐$_____ Earnest Money in the form of _____
is acknowledged.

Escrow Agent: _____                                  Date: _____

By: _____
                                                                                        Email Address

                                                                                        Phone: (____) _____

_____
Address

_____                                  Fax: (____) _____
City                     State                     Zip

TREC NO. 24-14