**Fill in this information to identify the case:**

Debtor 1    2020 McGowen, L.L.C.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Southern District of Texas

Case number   17-32788-H2-11

## Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) **that you received.**

### Part 1:   Identify the Claim

| | |
|---|---|
| 1. **Who is the current creditor?** | Stallion Texas Real Estate Fund, L.L.C. <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor _____ |
| 2. **Has this claim been acquired from someone else?** | ☑ No <br> ☐ Yes. From whom? _____ |

3. **Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Stallion Texas Real Estate Fund, L.L.C.
Name

10119 Lake Creek Pkwy, Ste. 202
Number    Street

Austin        TX        78729
City       State       ZIP Code

Contact phone   512.219.5558

Contact email _____

**Where should payments to the creditor be sent?** (if different)

Name

Number    Street

City       State       ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __

| | |
|---|---|
| 4. **Does this claim amend one already filed?** | ☐ No <br> ☑ Yes. Claim number on court claims registry (if known) _____     Filed on _____ <br>                                               MM / DD / YYYY <br> This Proof of Claim amends Creditor's Informal Proof of Claim filed on Nov. 7, 2017, by Creditor's Motion for Relief from Stay |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☐ No <br> ☑ Yes. Who made the earlier filing?   Creditor's attorney; see Part 3 below |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____  ____  ____  ____

**7. How much is the claim?**

$_____ 1,400,682.93 . **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money loaned

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** Deed of Trust

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____ 1,400,682.93

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____ 1,400,682.93

**Annual Interest Rate** (when case was filed) 18.00 %

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| Official Form 410 | Proof of Claim | page 2 |
|---|---|---|

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br><br>☐ Yes. *Check one:* | **Amount entitled to priority** |
|---|---|---|
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  __12/29/2017__
                 MM / DD / YYYY

_____
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | William S. Chesney, III |
|---|---|
| | First name        Middle name        Last name |
| Title | Attorney In Charge |
| Company | Frank, Elmore, Lievens, Chesney & Turet, L.L.P. |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 9225 Katy Freeway, Ste. 250 |
| | Number      Street |
| | Houston                   TX     77024 |
| | City                      State    ZIP Code |
| Contact phone | 713.224.9400            Email    wchesney@felct.com |

**Loan, 2020 McGowen, L.L.C.**
**$1,375,000.00 Orig. Loan, Oct 12, 2015**
**Loan Maturity, Nov 1, 2016**

| | | |
|---|---|---|
| Prinicipal Balance | $ | 1,375,000.00 |
| Less Unfunded Construction Escrow | $ | (30,687.10) |
| Less Impound Escrow | $ | (1,391.10) |
| **Principal Sub-Total** | **$** | **1,342,921.80** |
| Accrued Interest, at 12.00% | $ | 54,698.63 |
| Loan Reimburseable Charges | $ | 1,000.00 |
| Unpaid Late Fees | $ | 2,062.50 |
| **Total Loan Balance:** | **$** | **1,400,682.93** |

Breakdown of Reimbursable Charges:

| Date | Payee | Amount |
|---|---|---|
| 6/22/2016 | Ben Williams, PLLC | $ 250.00 |
| 3/31/2017 | Ben Williams, PLLC | $ 250.00 |
| 4/11/2017 | Ben Williams, PLLC | $ 500.00 |

**Promissory Note**

**Date:** October 12, 2015

**Borrower:** 2020 MCGOWEN, LLC, a Texas limited liability company

**Borrower's Mailing Address:** 832 Yale Street
Houston, Texas 77007

**Lender:** STALLION TEXAS REAL ESTATE FUND, LLC

**Payee and Place for Payment:** c/o Stallion Funding, LLC
12710 Research Blvd., Suite 115
Austin, Texas 78759

**Principal Amount:** $1,375,000.00

**Annual Interest Rate:** Twelve percent (12.00%) per annum from date advanced

**Maturity Date:** November 1, 2016

**Annual Interest Rate on Matured, Unpaid Amounts:**

18.00% percent per annum

**Terms of Payment (principal and interest):**

Interest only shall be due and payable in monthly installments plus monthly tax escrow in the amount of $1391.10, commencing on December 1, 2015 and continuing regularly thereafter on the same date of each month until November 1, 2016, when the entire amount hereof, principal and interest then remaining unpaid, shall be due and payable.

Any prepayment of this note before four months from the date hereof or from the date of the first advance, whichever event shall last occur, will be subject to a prepayment premium equal to the difference between the amount of interest actually accrued on the date of prepayment and the total amount of interest that would have accrued to four months from the date hereof or from the date of the first advance, whichever event shall last occur, if no prepayment had been made. After four months from the date hereof or from the date of the first advance, whichever event shall last occur, this Note may be prepaid in whole or in part without premium or penalty.

If any installment becomes overdue for more than 10 days, at Lender's option a late payment charge of 5% may be charged in order to defray the expense of

1

handling the delinquent payment.

**Security for Payment:**

This note is secured by a deed of trust of even date herewith from 2020 MCGOWEN, LLC, a Texas limited liability company to BENJAMIN K. WILLIAMS, Trustee, which covers the following real property:

> Lot(s) 13 through 17, in Block 1 of VIEWPOINT SQUARE REPLAT NO. 2, a subdivision in Harris County, Texas according to the map or plat thereof recorded in Film Code No. 674645 of the Map and/or Plat Records of Harris County, Texas.

> Together with the following personal property:

> All fixtures, supplies, building materials, and other goods of every nature now or hereafter located, used, or intended to be located or used on the Property;

> All plans and specifications for development of or construction of improvements on the Property;

> All contracts and subcontracts relating to the construction of improvements on the Property;

> All accounts, contract rights, instruments, documents, general intangibles, and chattel paper arising from or by virtue of any transactions relating to the Property;

> All permits, licenses, franchises, certificates, and other rights and privileges obtained in connection with the Property;

> All proceeds payable or to be payable under each policy of insurance relating to the Property; and

> All products and proceeds of the foregoing.

> Notwithstanding any other provision in this deed of trust, the term "Property" does not include personal effects used primarily for personal, family, or household purposes.

**Other Security for Payment:**

Borrower promises to pay to the order of Lender the Principal Amount plus interest at the Annual Interest Rate. This note is payable at the Place for Payment and according to the Terms of Payment. All unpaid amounts are due by the Maturity Date. After maturity, Borrower promises to pay any unpaid principal balance plus interest at the Annual Interest Rate on Matured, Unpaid Amounts.

If Borrower defaults in the payment of this note or in the performance of any obligation

2

in any instrument securing or collateral to this note, Lender may declare the unpaid principal balance, earned interest, and any other amounts owed on the note immediately due. Borrower and each surety, endorser, and guarantor waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, protest, and notice of protest, to the extent permitted by law.

Borrower also promises to pay reasonable attorney's fees and court and other costs if this note is placed in the hands of an attorney to collect or enforce the note. These expenses will bear interest from the date of advance at the Annual Interest Rate on Matured, Unpaid Amounts. Borrower will pay Lender these expenses and interest on demand at the Place for Payment. These expenses and interest will become part of the debt evidenced by the note and will be secured by any security for payment.

Interest on the debt evidenced by this note will not exceed the maximum rate or amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the Principal Amount or, if the Principal Amount has been paid, refunded. On any acceleration or required or permitted prepayment, any excess interest will be canceled automatically as of the acceleration or prepayment or, if the excess interest has already been paid, credited on the Principal Amount or, if the Principal Amount has been paid, refunded. This provision overrides any conflicting provisions in this note and all other instruments concerning the debt.

Each Borrower is responsible for all obligations represented by this note.

When the context requires, singular nouns and pronouns include the plural.

2020 MCGOWEN, LLC,
a Texas limited liability company

By: _____
    Terry J. Fisher, Manager

0010-119
LoBW/Stallion/2104Oatfield.KAVAC
BKW/kjd

3

DT
S

ER 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

### Deed of Trust and Security Agreement

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER**

#### Terms

**Date:**   October 12, 2015

**Grantor:**   2020 MCGOWEN, LLC, a Texas limited liability company

**Grantor's Mailing Address:**   832 Yale Street
Houston, Texas 77007

**Trustee:**   BENJAMIN K. WILLIAMS

**Trustee's Mailing Address:** 12710 Research Blvd., Suite 115
Austin, Texas 78759

**Lender:**   STALLION TEXAS REAL ESTATE FUND, LLC

**Lender's Mailing Address:** c/o Stallion Funding, LLC
12710 Research Blvd., Suite 115
Austin, Texas 78759

**Obligation**

  **Note**

  **Date:**  of even date hereof

  **Original principal amount:** $1,375,000.00

  **Borrower:**   2020 MCGOWEN, LLC,
a Texas limited liability company

  **Lender:**   STALLION TEXAS REAL ESTATE FUND, LLC

  **Maturity date:**   November 1, 2016

1TR

1EE

1

First Republic Title
GF# 150080-HTT4

**Property (including any improvements):**

Lot(s) 13 through 17, in Block 1 of VIEWPOINT SQUARE REPLAT NO. 2, a subdivision in Harris County, Texas according to the map or plat thereof recorded in Film Code No. 674645 of the Map and/or Plat Records of Harris County, Texas.

Together with the following personal property:

All fixtures, supplies, building materials, and other goods of every nature now or hereafter located, used, or intended to be located or used on the Property;

All plans and specifications for development of or construction of improvements on the Property;

All contracts and subcontracts relating to the construction of improvements on the Property;

All accounts, contract rights, instruments, documents, general intangibles, and chattel paper arising from or by virtue of any transactions relating to the Property;

All permits, licenses, franchises, certificates, and other rights and privileges obtained in connection with the Property;

All proceeds payable or to be payable under each policy of insurance relating to the Property; and

All products and proceeds of the foregoing.

Notwithstanding any other provision in this deed of trust, the term "Property" does not include personal effects used primarily for personal, family, or household purposes.

**Prior Lien**: None

**Other Exceptions to Conveyance and Warranty:**

Subject to the easements, assessments, restrictions, mineral interests and covenants of record against the herein described property, if any.

For value received and to secure payment of the Obligation, Grantor conveys the Property to Trustee in trust. Grantor warrants and agrees to defend the title to the Property, subject to the Other Exceptions to Conveyance and Warranty. On payment of the Obligation and all other amounts secured by this deed of trust, this deed of trust will have no further effect, and Lender

ER 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

UNOFFICIAL COPY

will release it at Grantor's expense.

**Clauses and Covenants**

**A.    Grantor's Obligations**

Grantor agrees to—

1.    keep the Property in good repair and condition;

2.    pay all taxes and assessments on the Property before delinquency, not authorize a taxing entity to transfer its tax lien on the Property to anyone other than Lender, and not request a deferral of the collection of taxes pursuant to section 33.06 of the Texas Tax Code;

3.    defend title to the Property subject to the Other Exceptions to Conveyance and Warranty and preserve the lien's priority as it is established in this deed of trust;

4.    maintain all insurance coverages with respect to the Property, revenues generated by the Property, and operations on the Property that Lender reasonably requires ("Required Insurance Coverages"), issued by insurers and written on policy forms acceptable to Lender, and as to property loss, that are payable to Lender under policies containing standard mortgagee clauses, and deliver evidence of the Required Insurance Coverages in a form acceptable to Lender at least ten days before the expiration of the Required Insurance Coverages;

5.    obey all laws, ordinances, and restrictive covenants applicable to the Property;

6.    keep any buildings occupied as required by the Required Insurance Coverages;

7.    if the lien of this deed of trust is not a first lien, pay or cause to be paid all prior lien notes and abide by or cause to be abided by all prior lien instruments; and

8.    notify Lender of any change of address.

**B.    Lender's Rights**

1.    Lender or Lender's mortgage servicer may appoint in writing one or more substitute trustees, succeeding to all rights and responsibilities of Trustee. Such written appointments need not be filed in the Official Public Records of the county where the property is located or in any other public or governmental records in order to be effective. All rights, remedies and duties of Trustee under this Deed of Trust may be exercised or performed by one or more trustees acting alone or together.

      a. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more

3

ER 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

trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

b. Neither the Trustee named herein nor any Trustee who may act hereunder shall in any way be disqualified from acting as such Trustee for the reason that he may now be, may become or at any applicable time may be a manager, director, an officer, an employee, a shareholder, an agent, or an attorney of Beneficiary or may be otherwise related to Beneficiary.

c. Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

2. If the proceeds of the Obligation are used to pay any debt secured by prior liens, Lender is subrogated to all the rights and liens of the holders of any debt so paid.

3. Lender may apply any proceeds received under the property insurance policies covering the Property either to reduce the Obligation or to repair or replace damaged or destroyed improvements covered by the policy. If the Property is Grantor's primary residence and Lender reasonably determines that repairs to the improvements are economically feasible, Lender will make the property insurance proceeds available to Grantor for repairs.

4. Notwithstanding the terms of the Note to the contrary, and unless applicable law prohibits, all payments received by Lender from Grantor with respect to the Obligation or this deed of trust may, at Lender's discretion, be applied first to amounts payable under this deed of trust and then to amounts due and payable to Lender with respect to the Obligation, to be applied to late charges, principal, or interest in the order Lender in its discretion determines.

5. If Grantor fails to perform any of Grantor's obligations, Lender may perform those obligations and be reimbursed by Grantor on demand for any amounts so paid, including attorney's fees, plus interest on those amounts from the dates of payment at the rate stated in the Note for matured, unpaid amounts. The amount to be reimbursed will be secured by this deed of trust.

6. **COLLATERAL PROTECTION INSURANCE NOTICE**

**In accordance with the provisions of section 307.052(a) of the Texas Finance Code, the Beneficiary hereby notifies the Grantor as follows:**

(A) _____ the Grantor is required to:

(i) keep the collateral insured against damage in the amount the Lender specifies;

4

(ii)              purchase the insurance from an insurer that is authorized to do business in the state of Texas or an eligible surplus lines insurer; and

(iii)            name the Lender as the person to be paid under the policy in the event of a loss;

(B)          __ the Grantor must, if required by the Lender, deliver to the Lender a copy of the policy and proof of the payment of premiums; and

(C)          if the Grantor fails to meet any requirement listed in Paragraph (A) or (B), the Lender may obtain collateral protection insurance on behalf of the Grantor at the Grantor's expense.

7.      If there is a default on the Obligation or if Grantor fails to perform any of Grantor's obligations and the default continues after any required notice of the default and the time allowed to cure, Lender may—

           a.      declare the unpaid principal balance and earned interest on the Obligation immediately due;

           b.      exercise Lender's rights with respect to rent under the Texas Property Code as then in effect;

           c.      direct Trustee to foreclose this lien, in which case Lender or Lender's agent will cause notice of the foreclosure sale to be given as provided by the Texas Property Code as then in effect; and

           d.      purchase the Property at any foreclosure sale by offering the highest bid and then have the bid credited on the Obligation.

8.      Lender may remedy any default without waiving it and may waive any default without waiving any prior or subsequent default.

**C.**    **Trustee's Rights and Duties**

If directed by Lender to foreclose this lien, Trustee will—

1.      either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then in effect;

2.      sell and convey all or part of the Property "AS IS" to the highest bidder for cash with a general warranty binding Grantor, subject to the Prior Lien and to the Other Exceptions to Conveyance and Warranty and without representation or warranty, express or implied, by Trustee;

5

ER 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

3. from the proceeds of the sale, pay, in this order—

    a. expenses of foreclosure, including a reasonable commission to Trustee;

    b. to Lender, the full amount of principal, interest, attorney's fees, and other charges due and unpaid;

    c. any amounts required by law to be paid before payment to Grantor; and

    d. to Grantor, any balance; and

4. be indemnified, held harmless, and defended by Lender against all costs, expenses, and liabilities incurred by Trustee for acting in the execution or enforcement of the trust created by this deed of trust, which includes all court and other costs, including attorney's fees, incurred by Trustee in defense of any action or proceeding taken against Trustee in that capacity.

### D. General Provisions

1. If any of the Property is sold under this deed of trust, Grantor must immediately surrender possession to the purchaser. If Grantor fails to do so, Grantor will become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

2. Recitals in any trustee's deed conveying the Property will be presumed to be true.

3. Proceeding under this deed of trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

4. This lien will remain superior to liens later created even if the time of payment of all or part of the Obligation is extended or part of the Property is released.

5. If any portion of the Obligation cannot be lawfully secured by this deed of trust, payments will be applied first to discharge that portion.

6. Grantor assigns to Lender all amounts payable to or received by Grantor from condemnation of all or part of the Property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the Property. After deducting any expenses incurred, including attorney's fees and court and other costs, Lender will either release any remaining amounts to Grantor or apply such amounts to reduce the Obligation. Lender will not be liable for failure to collect or to exercise diligence in collecting any such amounts. Grantor will immediately give Lender notice of any actual or threatened proceedings for condemnation of all or part of the Property.

7. Grantor assigns to Lender absolutely, not only as collateral, all present and future rent and other income and receipts from the Property. Grantor warrants the validity and

ER 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

UNOFFICIAL COPY

ER 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

enforceability of the assignment. Grantor may as Lender's licensee collect rent and other income and receipts as long as Grantor is not in default with respect to the Obligation or this deed of trust. Grantor will apply all rent and other income and receipts to payment of the Obligation and performance of this deed of trust, but if the rent and other income and receipts exceed the amount due with respect to the Obligation and the deed of trust, Grantor may retain the excess. If Grantor defaults in payment of the Obligation or performance of this deed of trust, Lender may terminate Grantor's license to collect rent and other income and then as Grantor's agent may rent the Property and collect all rent and other income and receipts. Lender neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the Property. Lender may exercise Lender's rights and remedies under this paragraph without taking possession of the Property. Lender will apply all rent and other income and receipts collected under this paragraph first to expenses incurred in exercising Lender's rights and remedies and then to Grantor's obligations with respect to the Obligation and this deed of trust in the order determined by Lender. Lender is not required to act under this paragraph, and acting under this paragraph does not waive any of Lender's other rights or remedies. If Grantor becomes a voluntary or involuntary debtor in bankruptcy, Lender's filing a proof of claim in bankruptcy will be deemed equivalent to the appointment of a receiver under Texas law.

8.    Interest on the debt secured by this deed of trust will not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess will be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides any conflicting provisions in this and all other instruments concerning the debt.

9.    In no event may this deed of trust secure payment of any debt that may not lawfully be secured by a lien on real estate or create a lien otherwise prohibited by law.

10.    If Grantor transfers any part of the Property without Lender's prior written consent, Lender may declare the Obligation immediately payable and invoke any remedies provided in this deed of trust for default. If the Property is residential real property containing fewer than five dwelling units or a residential manufactured home, this provision does not apply to (a) a subordinate lien or encumbrance that does not transfer rights of occupancy of the Property; (b) creation of a purchase-money security interest for household appliances; (c) transfer by devise, descent, or operation of law on the death of a co-Grantor; (d) grant of a leasehold interest of three years or less without an option to purchase; (e) transfer to a spouse or children of Grantor or between co-Grantors; (f) transfer to a relative of Grantor on Grantor's death; (g) a transfer resulting from a decree of a dissolution of marriage, a legal separation agreement, or an incidental property settlement agreement by which the spouse of Grantor becomes an owner of the Property; or (h) transfer to an inter vivos trust in which Grantor is and remains a beneficiary and occupant of the Property.

11.    Grantor may not sell, transfer, or otherwise dispose of any Property, whether

7

voluntarily or by operation of law, without the prior written consent of Lender. If granted, consent may be conditioned upon (a) the grantee's integrity, reputation, character, creditworthiness, and management ability being satisfactory to Lender; and (b) the grantee's executing, before such sale, transfer, or other disposition, a written assumption agreement containing any terms Lender may require, such as a principal pay down on the Obligation, an increase in the rate of interest payable with respect to the Obligation, a transfer fee, or any other modification of the Note, this deed of trust, or any other instruments evidencing or securing the Obligation.

Grantor may not cause or permit any Property to be encumbered by any liens, security interests, or encumbrances other than the liens securing the Obligation and the liens securing ad valorem taxes not yet due and payable without the prior written consent of Lender. If granted, consent may be conditioned upon Grantor's executing, before granting such lien, a written modification agreement containing any terms Lender may require, such as a principal pay down on the Obligation, an increase in the rate of interest payable with respect to the Obligation, an approval fee, or any other modification of the Note, this deed of trust, or any other instruments evidencing or securing the Obligation.

Grantor may not grant any lien, security interest, or other encumbrance (a "Subordinate Instrument") covering the Property that is subordinate to the liens created by this deed of trust without the prior written consent of Lender. If granted, consent may be conditioned upon the Subordinate Instrument's containing express covenants to the effect that—

a.   the Subordinate Instrument is unconditionally subordinate to this deed of trust;

b.   if any action is instituted to foreclose or otherwise enforce the Subordinate Instrument, no action may be taken that would terminate any occupancy or tenancy without the prior written consent of Lender, and that consent, if granted, may be conditioned in any manner Lender determines;

c.   rents, if collected by or for the holder of the Subordinate Instrument, will be applied first to the payment of the Obligation then due and to expenses incurred in the ownership, operation, and maintenance of the Property in any order Lender may determine, before being applied to any indebtedness secured by the Subordinate Instrument;

d.   written notice of default under the Subordinate Instrument and written notice of the commencement of any action to foreclose or otherwise enforce the Subordinate Instrument must be given to Lender concurrently with or immediately after the occurrence of any such default or commencement; and

e.   in the event of the bankruptcy of Grantor, all amounts due on or with respect to the Obligation and this deed of trust will be payable in full before any payments on the indebtedness secured by the Subordinate Instrument.

8

Grantor may not cause or permit any of the following events to occur without the prior written consent of Lender: if Grantor is (a) a corporation, the dissolution of the corporation or the sale, pledge, encumbrance, or assignment of any shares of its stock; (b) a limited liability company, the dissolution of the company or the sale, pledge, encumbrance, or assignment of any of its membership interests; (c) a general partnership or joint venture, the dissolution of the partnership or venture or the sale, pledge, encumbrance, or assignment of any of its partnership or joint venture interests, or the withdrawal from or admission into it of any general partner or joint venturer; or (d) a limited partnership, (i) the dissolution of the partnership, (ii) the sale, pledge, encumbrance, or assignment of any of its general partnership interests, or the withdrawal from or admission into it of any general partner, (iii) the sale, pledge, encumbrance, or assignment of a controlling portion of its limited partnership interests, or (iv) the withdrawal from or admission into it of any controlling limited partner or partners. If granted, consent may be conditioned upon (a) the integrity, reputation, character, creditworthiness, and management ability of the person succeeding to the ownership interest in Grantor (or security interest in such ownership) being satisfactory to Lender; and (b) the execution, before such event, by the person succeeding to the interest of Grantor in the Property or ownership interest in Grantor (or security interest in such ownership) of a written modification or assumption agreement containing such terms as Lender may require, such as a principal pay down on the Obligation, an increase in the rate of interest payable with respect to the Obligation, a transfer fee, or any other modification of the Note, this deed of trust, or any other instruments evidencing or securing the Obligation.

12. When the context requires, singular nouns and pronouns include the plural.

13. The term *Note* includes all extensions, modifications, and renewals of the Note and all amounts secured by this deed of trust.

14. This deed of trust binds, benefits, and may be enforced by the successors in interest of all parties.

15. If Grantor and Borrower are not the same person, the term *Grantor* includes Borrower.

16. Grantor and each surety, endorser, and guarantor of the Obligation waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, protest, and notice of protest, to the extent permitted by law.

17. Grantor agrees to pay reasonable attorney's fees, trustee's fees, and court and other costs of enforcing Lender's rights under this deed of trust if this deed of trust is placed in the hands of an attorney for enforcement.

18. If any provision of this deed of trust is determined to be invalid or unenforceable, the validity or enforceability of any other provision will not be affected.

19. The term *Lender* includes any mortgage servicer for Lender.

9

ER 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

20.    Grantor represents that this deed of trust and the Note are given for the following purposes:

The Note renews and extends the balance of $ _292,967.44_ that Grantor owes on a prior note in the original principal amount of ONE MILLION THREE HUNDRED FOUR THOUSAND FORTY-TWO AND 18/100 DOLLARS ($1,304,042.18), which is dated June 12, 2014, executed by 2020 McGowen, LLC, a Texas limited liability company, and payable to the order of Viewpoint Development, L.L.C., a Texas limited liability company. The prior note is more fully described in and secured by a deed of trust on the Property, which is dated June 12, 2014, and recorded under Clerk's File No. 20140266017 of the Real Property Records of Harris County, Texas.

The balance of the indebtedness is for construction of improvements to the Property.

Grantor warrants to Lender and agrees that the proceeds of the Note will be used primarily for business or commercial purposes and not primarily for personal, family, or household purposes.

Grantor warrants to Lender that the Property will not be used as the Grantor's residence during the term of the Obligation.

21.    This conveyance is also made in trust to secure payment of all other present and future debts that Grantor may owe to Lender, regardless of how any other such debt is incurred or evidenced. Payment on all present and future debts of Grantor to Lender will be made at c/o Stallion Funding, LLC, 12710 Research Blvd, Suite 115, Austin, Texas 78759, in Travis County, Texas, and the debts will bear interest as provided in notes or other evidences of debt that Grantor will give to Lender. This conveyance is also made to secure payment of any renewal or extension of any present or future debt that Grantor owes to Lender, including any loans and advancements from Lender to Grantor under the provisions of this deed of trust. When Grantor repays all debts owed to Lender, this deed-of-trust lien will terminate only if Lender releases this deed of trust at the request of Grantor. Until Lender releases it, this deed of trust will remain fully in effect to secure other present and future advances and debts, regardless of any additional security given for any debt and regardless of any modification.

22.    Grantor will furnish to Lender or other holder of the Note annually, before taxes become delinquent, copies of tax receipts showing that all taxes on the Property have been paid. Grantor will annually furnish to Lender or other holder of the Note evidence of current paid-up insurance naming Lender or other holder of the Note as an insured.

23.    As used in this Section 23: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection;

10

(c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Grantor shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Grantor shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Grantor shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Grantor has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Grantor learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Grantor shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

24.     Grantor agrees to deliver to Lender, at Lender's request from time to time, financial statements of Grantor and each guarantor of the Note prepared in accordance with generally accepted accounting principles consistently applied, in detail reasonably satisfactory to Lender and certified to be true and correct by Grantor.

25.     In addition to creating a deed-of-trust lien on all the real and other property described above, Grantor also grants to Lender a security interest in all of the above-described personal property pursuant to and to the extent permitted by the Texas Uniform Commercial Code.

In the event of a foreclosure sale under this deed of trust, Grantor agrees that all the Property may be sold as a whole at Lender's option and that the Property need not be present at the place of sale.

E.     **Construction Loan Mortgage**

1.     This deed of trust is a "construction mortgage" within the meaning of section 9.334 of the Texas Business and Commerce Code. The liens and security interests created and granted by this deed of trust secure an obligation incurred for the construction of improvements

11

ER 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

on land including the acquisition cost of the land, if any.

2. Grantor agrees to comply with the covenants and conditions of the construction loan agreement, if any, executed in connection with the Note and this deed of trust. All advances made by Lender under the construction loan agreement will be indebtedness of Grantor secured by the liens created by this deed of trust, and such advances are conditioned as provided in the construction loan agreement.

3. All amounts disbursed by Lender before completion of the improvements to protect the security of this deed of trust up to the principal amount of the Note will be treated as disbursements under the construction loan agreement. All such amounts will bear interest from the date of disbursement at the rate stated in the Note, unless collections from Grantor of interest at that rate would be contrary to applicable law, in which event such amounts will bear interest at the rate stated in the Note for matured, unpaid amounts and will be payable on notice from Lender to Grantor requesting payment.

4. From time to time as Lender deems necessary to protect Lender's interests, Grantor will, on request of Lender, execute and deliver to Lender, in such form as Lender directs, assignments of any and all rights or claims that relate to the construction of improvements on the Property.

5. In case of breach by Grantor of the covenants and conditions of the construction loan agreement, Lender, at its option, with or without entry on the Property, may (a) invoke any of the rights or remedies provided in the construction loan agreement, (b) accelerate the amounts secured by this deed of trust and invoke the remedies provided in this deed of trust, or (c) do both.

6. If, after commencement of amortization of the Note, the Note and this deed of trust are sold by Lender, after the sale the construction loan agreement will cease to be a part of this deed of trust, and Grantor will not assert any right of setoff, counterclaim, or other claim or defense arising out of or in connection with the construction loan agreement against the obligations of the Note and this deed of trust.

2020 MCGOWEN, LLC
a Texas limited liability company

By: _____
Terry J. Fisher, Manager

12

ER 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

ER 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

THE STATE OF TEXAS

COUNTY OF _Harris_ 

    This instrument was acknowledged before me on the _12_ day of October, 2015 by TERRY J. FISHER, as Manager of 2020 MCGOWEN, LLC, a Texas limited liability company on behalf of said limited liability company.

**1OR**



_____
Notary Public, State of Texas

**PREPARED BY:**
Law Office of Ben Williams, PLLC
12710 Research Blvd, Ste 115
Austin, Texas 78759

0010-119
LoBW/STALLION/2020McGowen.2020McGowen
BKW/gcm

13

20150475043
# Pages 14
10/19/2015 09:17 AM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
STAN STANART
COUNTY CLERK
Fees  $64.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS

ER 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

## CONSTRUCTION LOAN AGREEMENT

This Construction Loan Agreement ("Agreement") is made on the date stated below between the Borrower and Lender who are identified and whose addresses are stated below. This Agreement relates to the manner of advancement and disbursement of the loan proceeds from the loan (the "Loan") evidenced by the Note described below to or for the benefit of Borrower and for the construction of the Improvements on the Land described below. The Note is secured by a Deed of Trust covering the Land and the Improvements described below.

**DATE:**    October 12, 2015

**BORROWER:**    2020 MCGOWEN, LLC, a Texas limited liability company

**BORROWER'S ADDRESS:**  832 Yale Street
Houston, Texas 77007

**LENDER:**    STALLION TEXAS REAL ESTATE FUND, LLC

**LENDER'S MAILING ADDRESS:**  c/o Stallion Funding, LLC
12710 Research Blvd., Suite 115
Austin, Texas 78759

**NOTE:**  $1,375,000.00 promissory note of even date executed by Borrower payable to Lender as stated in the Note, and secured by the Land and Improvements described below.

**LAND**:

Lot(s) 13 through 17, in Block 1 of VIEWPOINT SQUARE REPLAT NO. 2, a subdivision in Harris County, Texas according to the map or plat thereof recorded in Film Code No. 674645 of the Map and/or Plat Records of Harris County, Texas.

**IMPROVEMENTS**: New construction of five (5) single family residences on the property

**COST OF CONSTRUCTION**: $1,025,000.00

**ACQUISITION COST**:  $350,000.00

**AMOUNT AVAILABLE FOR CONSTRUCTION**: $1,025,000.00

**TITLE COMPANY**: First Republic Title LLC

**LOAN BROKER**:  Stallion Funding, LLC

**LOAN BROKER'S ADDRESS**:    12710 Research Blvd., Suite 115
Austin, Texas 78759

1

1. <u>Documentation Required for the Loan.</u> The obligations of Lender pursuant to this Agreement are subject to the following conditions precedent. Each document described below shall be in form and substance satisfactory to Lender, and shall have been delivered to Lender and executed by Borrower where required:

(a) A loan application, this Agreement, the Note, the Deed of Trust, and other documents pertaining to or securing the loan evidenced by the Note;

(b) A survey or plot plan (whichever Lender requires) of the Land acceptable to Lender, showing that the Land is not located in any designated flood plain or special flood hazard area;

(c) A copy of the final plans and specifications for the construction of the Improvements acceptable to Lender;

(d) A copy of the building permit for the Improvements;

(e) An appraisal of the Land and Improvements, ordered by and addressed to Lender, prepared by an appraiser acceptable to Lender, and satisfactory in all other respects to Lender;

(f) A budget satisfactory to Lender of all costs and expenses required to complete construction of the Improvements;

(g) Evidence acceptable to Lender that all roads providing access to the Land have been dedicated to the public and have been accepted for maintenance purposes;

(h) Evidence acceptable to Lender that all utilities are available to the Land;

(i) Builder's risk, worker's compensation, commercial general liability, flood (if necessary) and other insurance policies acceptable to Lender for the Improvements and the construction activities on the Land;

(j) A paid mortgagee's title insurance policy or interim construction binder (whichever Lender requires) in form and substance satisfactory to Lender in the amount of the Note and covering the lien created by the Deed of Trust;

(k) A copy of any earnest money contract relating to the Land and Improvements whereby Borrower will convey the property to a buyer;

(1) An affidavit stating that no construction has been done and no materials have been delivered to the Land;

(m) An Escrow Agreement; and

(n) Such other items as Lender may reasonably require.

2

2.  Purpose and Limitation of Advances.

(a) Lender has engaged the services of the Escrow Agent to administer the Loan, including but not limited to authorizing and coordinating the advancement of the Acquisition Cost and the disbursement of the Amount Available for Construction, and has authorized the Escrow Agent to act on Lender's behalf. Unless otherwise instructed by Lender, Borrower will submit all requests for disbursement and any and all questions concerning the Loan or Lender's requirements to the Escrow Agent.

(b) Subject to the provisions of this Agreement, Lender will advance funds to Borrower in the aggregate amount of the Note. Lender will advance the amount of the Acquisition Cost (if any) at the closing of the loan evidenced by the Note (the "Closing Date"). The Acquisition Cost is the amount advanced by Lender on Borrower's behalf to (i) purchase the Land or (ii) refinance a purchase money lien against the Land or (iii) reimburse Borrower for Borrower's purchase money (including other closing costs and interest, if approved by Lender) in acquiring the Land.

(c) The Amount Available for Construction is equal to the Note amount less the Acquisition Cost. Lender will advance the Amount Available for Construction into an escrow account (the "Escrow Account") established with the Escrow Agent or an Escrow Agent acceptable to Lender ("Escrow Agent") for the benefit of Borrower. The Amount Available for Construction will be disbursed to Borrower during the course of the construction of the Improvements, in accordance with this Agreement. The Amount Available for Construction will be disbursed solely to pay for costs of labor performed and materials furnished. If Borrower is in default under the Note, this Agreement, or any other document executed in connection with the loan evidenced by the Note, Broker may require the Escrow Agent to pay any loan proceeds remaining in escrow to Lender, and whereupon interest on such funds will immediately cease.

(d) The Cost of Construction is the total amount that Borrower has estimated it will cost to construct the Improvements. Lender in its discretion may require that the difference between the Cost of Construction and the Amount Available for Construction be deposited by Borrower into the Escrow Account on the Closing Date. All of the funds so deposited by Borrower shall be disbursed prior to the disbursement of any of the Amount Available for Construction.

(e) Construction disbursements are to be made to Borrower for work done during the preceding period or part thereof. Requests for construction disbursements shall be made not more often than once every two weeks on forms approved by Lender. Each construction disbursement shall be in an amount equal to the Cost of Construction times the percentage of completion (as determined by Lender and/or its inspectors), less previous disbursements made to Borrower for construction purposes. Lender may prepare a chart for determining the percentage of completion and the schedule of disbursements to be made by Lender, and Lender may limit disbursements according to that schedule based on the percentage of the Improvements that are complete at the time of any request for construction disbursements. Lender will not disburse construction loan funds for uninstalled materials to be utilized in the construction of the Improvements, unless title to the materials has passed to Borrower and the materials are stored on the Land in a manner acceptable to Lender.

(f) Lender may retain from each disbursement a percentage of that disbursement so that by the time all of the Amount Available for Construction (except the retainage) has been

3

disbursed, Lender will hold in retainage an amount equal to ten percent (10%) of the Cost of Construction. In the alternative, Lender may hold the retainage out of the final disbursement, whether or not Lender has previously held any retainage, provided that the amount to be held in retainage will not exceed ten percent (10%) of the Cost of Construction.

(g) Lender reserves the right, at any time when Lender in its sole judgment and discretion deems it necessary or desirable, to limit any or all disbursements to an amount equal to the total of the purchase price of uninstalled materials stored on the Land in a manner acceptable to Lender, plus the cost of the portions of the work acceptably completed as approved by Lender, less prior disbursements.

(h) Whenever in the sole opinion of Lender the cost of completing the Improvements pursuant to the plans and specifications approved by Lender exceeds the total amount of undisbursed loan proceeds, Borrower, at Lender's request, will pay such excess to the satisfaction of Lender into the Escrow Account prior to any further disbursements of the Amount Available for Construction.

(i) Disbursements under this Agreement will normally be made to Borrower. However, Lender in its discretion may cause payments for the cost of construction of the Improvements to be made by check payable directly to any contractor, subcontractor, or supplier.

(j) Borrower must submit a Draw Request and/or communicate to Lender or to Stallion Funding, LLC, an update on the property and improvements made thereof within 45 days from the time of this loan funding or since the previous disbursement, otherwise at Lender's discretion this may be deemed a default of the loan agreement (due to inactivity), an inspector may be sent to the subject property at Borrower's sole expense for a site inspection, and Lender may pursue all other remedies available at law. In addition, if such default occurs, Borrower understands that he is fully responsible for the monthly interest payment (including monthly taxes and insurance) even if there is an Interest Carry account set up by Lender or its agent at the time of closing. Borrower understands that the monthly payments will NOT be paid from the Interest Carry account until improvements satisfactory to Lender or its agent are once again made to the Property.

3.   Conditions For Disbursements. As a condition precedent to each construction disbursement, Lender, at its option, may require Borrower to furnish or cause to be furnished to Lender the following documents covering each disbursement:

(a) As a condition precedent to the first disbursement following actual commencement of construction of the Improvements, Lender may require Borrower to execute and file of record in the county where the Land is located an Affidavit of Commencement that complies with Texas Property Code Section 53.124 and that is acceptable to Lender. The Affidavit of Commencement must state the actual date of the commencement of construction of the Improvements, and the date must be after the date that the Deed of Trust was executed, acknowledged, and recorded;

(b) Prior to the time the foundation is poured, Borrower will obtain a survey of the Land certified by a registered and licensed engineer or surveyor showing where the Improvements, including the foundation, are to be located on the Land, and showing no encroachments or protrusions of lot lines, easements, or setback lines;

4

(c) A certificate executed by Borrower that it is not in default under the Note or any document securing the Note, and that all representations and warranties of Borrower contained in all such documents remain accurate, true, and correct;

(d) Evidence satisfactory to Lender that the remaining undisbursed funds under the Note are sufficient to complete construction of the Improvements;

(e) A summary of amounts actually spent from previous disbursements;

(f) Executed lien waivers signed by all subcontractors and all suppliers of materials used in the construction;

(g) An affidavit executed by Borrower stating that all bills for labor and material have been paid in full;

(h) An endorsement to the mortgagee's title insurance policy or interim construction binder in form and substance satisfactory to Lender, showing nothing further encumbering the Land; and

(i)    Such other items as Lender shall reasonably require.

4.    <u>Final Disbursement.</u> The final disbursement (except for retainage, if any, which will be disbursed in accordance with Section 5) shall be disbursed at the completion of the Improvements when Borrower has delivered to Lender the following:

(a)    A Certificate of Occupancy, where applicable;

(b) Affidavit of Completion executed by Borrower, and supporting evidence (including, but not limited to, waivers of lien and releases signed by all subcontractors and suppliers of materials) stating that: (i) the construction work for the Improvements has been fully completed; and (ii) all bills for labor and material have been paid in full;

(c) Evidence that Borrower has complied with all applicable laws pertaining to the location, development, and construction of the Improvements and that all governmental authorities having jurisdiction have approved: (i) the location, development, and construction of the Improvements to the Land; and (ii) all other matters requiring approval by governmental authorities; and

(d) A final survey of the Land, showing no encroachments or protrusions of lot lines, easements, or setback lines, in form and substance satisfactory to Lender.

5.    <u>Disbursement of Retainage.</u> If Lender has held retainage, the retainage will be disbursed according to the following conditions. If the Land is located within the jurisdiction of a governmental entity which has authority to issue a Certificate of Occupancy, or other similar certificate, then the retainage will be disbursed thirty-one days after the following events: (i) completion of the Improvements; (ii) a Certificate of Occupancy, or other similar certificate, has been issued; (iii) an Affidavit of Completion acceptable to Lender has been executed by Borrower; (iv) the Affidavit of Completion has been filed in the Real Property Records of the county where the Land is

located; and (v) Borrower has complied with the provisions of Section 4 of this Agreement. If the Land is not located within the jurisdiction of a governmental entity which has authority to issue a Certificate of Occupancy, or other similar certificate, then the retainage will be disbursed thirty-one days after the following events: (i) completion of the Improvements; (ii) an Affidavit of Completion acceptable to Lender has been executed by Borrower; (iii) the Affidavit of Completion has been filed in the Real Property Records of the county where the Land is located; and (iv) Borrower has complied with the provisions of Section 4 of this Agreement. Notwithstanding any statement in this Section to the contrary, the retainage will not be disbursed if any liens have been filed against the Land in the Real Property Records of the county where the Land is located. Further, Lender may withhold approval of payment of the retainage until after Lender is presented evidence satisfactory to Lender, including but not limited to affidavits by Borrower, showing payment in full of all obligations incurred in connection with construction.

6. Inspections. Lender shall be entitled to designate, at Borrower's sole expense, an architect or engineer to make on behalf of Lender any inspections or certifications required by Lender, and Lender shall not be required to make any loan disbursement until Lender has received inspections and certifications satisfactory to it. Lender may inspect the Improvements but shall not be required to inspect. Prior to each loan disbursement, and at such other times as Lender may require, Borrower will be required to call for a physical inspection by Lender or other party designated by Lender. Lender is not obligated to deliver or report to Borrower the results of any inspection made by Lender or its officers, employees, agents, or any third party architect or engineer designated by Lender. Borrower is advised to have its own inspections made of the Improvements during the course of construction. Lender has no liability or responsibility concerning the construction of the Improvements. Neither Borrower nor any third party may rely on Lender's or Lender's agents' inspection as certification of the quality of construction. Lender shall have no liability for the failure of Borrower to properly construct the Improvements; to insure the Improvements; or to complete the Improvements.

7. Advertising by Lender. Borrower agrees that during the term of the loan, Lender may erect and maintain on the Land one advertising sign indicating that the construction financing has been provided by Lender.

8. Borrower's Covenants. Representations and Warranties. In order to induce Lender to enter into this Agreement, Borrower covenants, represents and warrants to Lender (which covenants, representations and warranties will be continually in full force and effect throughout the term of this Agreement and any extensions and renewals hereof) that:

(a) Borrower is duly authorized to execute the Note and the other loan documents, including this Agreement, to which it is a party; and all action on Borrower's part requisite for the due execution, delivery and performance of the Note and the other loan documents, including this Agreement, to which Borrower is a party has been duly and effectively taken.

(b) The financial statements of Borrower which have been delivered to Lender have been prepared in accordance with generally accepted accounting principles, consistently applied, and fairly present the financial condition and changes in financial position of Borrower as at the date or dates and for the period or periods stated. No change has since occurred in the financial condition of Borrower which would have a material adverse effect.

6

(c) Borrower has filed all tax returns and reports required to be filed and has paid all taxes, assessments, fees and other governmental charges levied upon it or upon its properties or income which are due and payable, including interest and penalties, or has provided adequate reserves for the payment thereof.

(d) The Improvements, when completed in accordance with the plans, will comply with all applicable laws, ordinances, regulations, restrictive covenants and requirements of governmental authorities (including, without limitation, building ordinances, health ordinances, handicap ordinances, zoning laws and environmental regulations). Prior to commencement of construction of the Improvements, the plans will have been approved by all governmental authorities having jurisdiction.

(e) The budget accurately reflects or will accurately reflect all costs which will be incurred by Borrower in the acquisition and construction of the Land and the Improvements.

(f) Prior to recording the Deed of Trust, no work of any kind (including the destruction or removal of any existing improvements, site work, clearing, grubbing, draining, or fencing of the Land) shall have commenced or shall have been performed on the Land; no equipment or material shall have been delivered to the Land; and no contract or affidavit for the supplying of labor, materials, or services for the construction of the Improvements shall have been recorded in the Real Property Records of the county where the Land is located.

(g) Prior to the construction of any Improvements, Borrower shall have complied with the requirements of the deed restrictions concerning approval of the plans and specifications by an architectural control committee or similar board or entity. If the approval by the architectural control committee is required, then Borrower will be required to obtain that approval from the appropriate person, board, or other entity. Borrower will furnish Lender with a copy of the applicable approval letter upon request by Lender.

(h) This Agreement, all loan documents, all financial statements, plans, budgets, schedules, loan applications, and other materials submitted to Lender in connection with the Loan fully and fairly state the matters with which they purport to deal, and neither misstate any material fact nor fail to state any material fact. Borrower agrees that all loan documents, all financial statements, plans, budgets, schedules, loan applications, and other materials submitted to Lender in the future shall comply with this provision.

(i) The Improvements will be constructed and fully equipped in a good and workmanlike manner with materials of high quality, strictly in accordance with the plans and specifications approved by Lender, and such construction and equipping will be commenced as soon as possible and prosecuted with due diligence and will be fully completed not later than the loan maturity date.

(j) No changes will be made in the plans and specifications submitted to Lender except on the written approval of the same by Lender.

(k) No substantial extras shall be allowed to any contractor or subcontractor or material change made in any contract or subcontract without the Lender's prior written approval and consent.

7

(1) Borrower will promptly furnish Lender, at Lender's request, after execution thereof, executed copies of all contracts between Borrower and all subcontractors and suppliers.

(m) Borrower will cooperate with Lender in arranging for inspections by representatives of Lender of the progress of construction from time to time and will promptly comply with Lender's requirements or satisfy any objections regarding construction of the Improvements or the progress thereof.

(n) Borrower will not suffer or permit any mechanics' or materialmen's lien claims to be filed or otherwise asserted against the Land and will promptly discharge the same in case of the filing of any claims for lien or proceedings for the enforcement thereof; provided, however, that Borrower shall have the right to contest in good faith and with reasonable diligence the validity of any such lien or claim on furnishing to Lender such security or indemnity as it may require.

(o) Borrower will pay all premiums on all insurance policies required from time to time during the progress of construction, and furnish to Lender additional and renewal insurance policies with companies, coverage, and amounts satisfactory to Lender.

(p) Borrower will pay all real estate taxes and assessments of every kind on the Land before they become delinquent, and Lender may at any time require Borrower to provide evidence that taxes have been paid current.

(q) Borrower will pay to Lender all Lender's expenses incurred in regard to this loan, including, but not limited to, attorney's fees, title insurance premiums and charges, survey costs, recording fees, expenses of making inspections, and other expenses incurred by Lender. Any expenses so paid or incurred by Lender shall be secured by the Deed of Trust. If Lender expends any amounts in performance of any of Borrower's covenants or agreements under the Note or any document securing the Note, such amounts shall constitute additional indebtedness secured under the Deed of Trust.

(r) Borrower will keep accurate and proper books and records of the construction of the Improvements, and will at all reasonable hours allow Lender or its representative to examine such books and records and all contracts and bills relating to the construction of the Improvements.

(s) All of the personal property, fixtures, attachments, and equipment delivered on, attached to, or used in connection with the construction of the Improvements or the operation thereof will be kept free and clear of all liens, encumbrances, and security interests, and Borrower will be the absolute owner of such personal property, fixtures, attachments, and equipment and will, from time to time, furnish Lender with satisfactory evidence of such ownership, including searches of applicable public records.

(t) At Lender's request, Borrower will execute and deliver, or cause to be executed and delivered, a security agreement granting Lender a security interest in fixtures and equipment (except for "household goods" or "consumer goods" as those terms are defined in Texas or Federal law) to the extent so required and other supporting documents which Lender may require in connection therewith, including financing statements and searches of records under the Uniform Commercial Code.

8

(u) Borrower will comply with the terms of (i) any permanent loan commitment for a permanent loan to be secured by the Land and the Improvements and/or (ii) any contract for the sale of the Land and the Improvements.

9. Insurance.

(a) Borrower shall obtain the following insurance and shall provide Lender proof thereof:

(i) All-risk builder's risk insurance during the construction of the Improvements, in an amount equal to 100% of the replacement cost of the Improvements, providing all-risk coverage on the Improvements and materials, including the perils of flood and other risks;

(ii) All-risk insurance after the completion of the construction of the Improvements in the amount of at least 100% of the replacement cost of the Improvements or in such additional amounts as Lender may require, providing all-risk coverage in the Improvements, including the perils of flood and other risks;

(iii) Commercial general liability insurance, including blanket contractual liability, products and completed operations, and personal injury, in amounts required by Lender;

(iv) Such other insurance as Lender may require.

(b) All insurance policies shall be issued on forms and by companies satisfactory to Lender and shall be delivered to Lender at the address set forth on the first page of this Agreement. The all-risk insurance policies shall have any loss made payable to Lender as mortgagee, and shall include standard mortgagee clauses. All policies shall have a provision giving Lender thirty (30) days' prior notice of cancellation or material change of the coverage.

(c) Upon request by Lender, Borrower will furnish to Lender a summary of the insurance coverage of Borrower in form and substance satisfactory to Lender and if requested will furnish Lender copies of the applicable insurance policies.

(d) In the case of any fire, accident or other casualty causing loss or damage to the Improvements, the insurance proceeds shall be used at the option of Lender (i) to repair or replace the Improvements or (ii) to prepay the indebtedness evidenced by the Note. If Lender elects to make the insurance proceeds available to Borrower to repair and restore the Improvements rather than applying the proceeds to payment of the indebtedness, the insurance proceeds will be deposited with Lender, together with any additional funds of Borrower which Lender determines are necessary to complete the repairs and restoration, and the proceeds will be disbursed by Lender in accordance with the terms of this Agreement before any additional disbursements shall be made under the Note. Borrower agrees to promptly and diligently repair and restore the Improvements.

(e) Borrower shall cooperate with Lender in obtaining for Lender the benefits of any insurance policy or other proceeds lawfully or equitably payable to Lender (including payment by Borrower of the expense of any independent appraisal on behalf of Lender in case of fire or other casualty affecting the Improvements).

(f)     In the event flood insurance is not required at the closing of any loan, Borrower hereby authorizes Lender and its assigns to purchase flood insurance on the property securing the loan if at any time during the term of the loan a determination is made subsequent to closing that flood insurance is necessary. Lender shall provide Borrower with ten (10) days written notice that flood insurance may be purchased, the amount necessary, and an estimate of the cost. If Borrower does not respond within ten (10) days of such written notice, Lender is hereby authorized to obtain flood insurance at the expense of Borrower from whatever source is advisable under the circumstances, and to provide Borrower with a copy of the flood insurance policy.

10.     <u>Financial Information and Building Reports.</u>

(a)     At least once each year and at such other times as Lender may request, Borrower shall deliver or cause to be delivered to Lender then current financial statements of Borrower and any other party liable on all or any portion of the Note which shall include a balance sheet and an income and expense statement. All financial statements submitted under this provision shall be prepared in accordance with generally accepted accounting principals; in form and substance satisfactory to Lender; and audited by an independent certified public accountant, certified as true and correct.

(b)     If requested by Lender, Borrower shall deliver to Lender a building and sales report. The building and sales report will list all of the properties under construction by Borrower (including houses or other construction activities being financed by lenders other than Lender), the percentage of completion of each property, loan information concerning each property, all sales during the previous calendar month, all sales contracts executed by Borrower during the previous calendar month, and such other information as Lender may require.

(c)     Where the character or amount of any asset or liability or item of income or expense is required to be determined or other accounting computation is required to be made for the purposes of this Agreement, this shall be done in accordance with generally accepted accounting principles.

11.     <u>Actions For Lender's Benefit Only.</u> The authority herein conferred on Lender and any action taken by Lender, including making inspections of the Land, procuring sworn statements and waivers of liens, and approving plans and specifications, will be taken by Lender for its own protection only, and Lender shall not be deemed to have assumed any responsibility to Borrower or any other person with respect to any such action herein authorized or taken by Lender.

12.     <u>Non-Waiver By Lender.</u> No course of dealing on the part of Lender, its officers, employees, or agents, nor any failure or delay by Lender with respect to exercising any right, power or remedy under a Note, this Agreement, or any other instrument shall operate as a waiver thereof.

13.     <u>Borrower's Default.</u> If Borrower fails to perform any covenant, condition, or obligation contained in this Agreement, Borrower shall be in default hereunder. The occurrence of an event of default as described in the Note or in the Deed of Trust (called therein an "Event of Default") or in any other loan document executed by Borrower shall also be considered an event of default under this Agreement. Upon the occurrence of an event of default, the obligation of Lender to make further construction disbursements shall immediately terminate, and Lender may direct the Escrow

10

Agent to return any undisbursed loan proceeds in the Escrow Account to Lender. Upon their return to Lender, such amounts will not be deemed advanced under the Note for the purpose of interest calculations.

14. <u>Election of Remedies.</u> Lender shall have all of the rights and remedies granted in this Agreement, the Note, the Deed of Trust, and all other documents executed by Borrower, as well as all other rights and remedies available in law or in equity. These same rights and remedies shall be cumulative and may be pursued separately, successively, or concurrently against Borrower or the Property or any part thereof, at the sole discretion of Lender. The exercise or failure to exercise any right or remedy shall not constitute a waiver or release thereof or of any other right or remedy, and the same shall be nonexclusive.

15. <u>Form and Substance.</u> All documents, certificates, insurance policies, and other items required under this Agreement to be executed and/or delivered to Lender shall be in form and substance satisfactory to Lender.

16. <u>Borrower In Control.</u> In no event shall Lender's rights and interests under this Agreement or the other loan documents be deemed to indicate that Lender is in control of the business, management or properties of Borrower or has power over the daily management functions and operating decisions made by Borrower.

17. <u>Applicable Law.</u> THIS AGREEMENT AND THE LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS AND THE LAWS OF THE UNITED STATES APPLICABLE TO TRANSACTIONS WITHIN TEXAS.

18. <u>Notice of Final Agreement.</u> THIS CONSTRUCTION LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

BORROWER'S SIGNATURE:

2020 MCGOWEN, LLC
a Texas limited liability company

By: _____
Terry J. Fisher, Manager

0010-119
LoBW/STALLION/2020McGowen.2020McGowen
BKW/gcm

11

**ESCROW AGREEMENT**
*(Post Closing)*

Date:           October ___, 2015

Borrower's Name and   2020 MCGOWEN, LLC, a Texas limited liability company
Mailing Address:

                    832 Yale Street
                    Houston, Texas 77007

Lender's Name and     STALLION TEXAS REAL ESTATE FUND, LLC
Mailing Address

                    *c/o* STALLION FUNDING, LLC
                    12710 Research Blvd., Suite 115
                    Austin, Texas 78759

Property:           2020 McGowen Avenue, Houston, Texas 77004

Escrow Agent:      STALLION FUNDING, LLC

Escrow Agent's      12710 Research Blvd., Suite 115
Mailing Address:    Austin, Texas 78759

This Escrow Agreement arises out of and as part of the settlement of a Loan from Lender.

*Escrow Fees.*

1.    For each draw request up to ten (10) draws, there will be a charge of **$0.00**. For each draw request thereafter, **$150.00** shall be deducted by Escrow Agent from the remaining funds

*Escrow Funds:*

1.    Escrow Agent hereby acknowledges receipt of funds (or the commitment of Lender to deliver such funds in stages) in the amount of **$1,025,000.00** and shall deposit same in

    ☒ its standard escrow account, on which interest is not earned by any party

2.    The undersigned hereby release Escrow Agent from any liability and assume all responsibility for any loss to the undersigned, which may result from a lack of FDIC insurance for this investment in excess of $250,000. The undersigned acknowledge that, in calculating the amount of available insurance, the FDIC will consolidate this investment with all other funds of the undersigned which are on deposit with the above designated financial institution.

Purpose of Escrow:

3.    To provide for new construction of five (5) single family residences on the Property in the amount of **$1,025,000.00** and interest carry reserve in the amount of **$0.00.**

4.    With respect to the performance of all parties, time is of the essence in the performance of this Escrow Agreement.

*Term of Escrow and Disbursement Instructions:*

5.    *Method of disbursement:*

    ☐    Escrow Funds are to disbursed at the end of the escrow period in a single lump sum.

    ☒    Escrow Funds are to be disbursed periodically over the escrow term in installments.

6.    *Specific Disbursement Instructions:*

(a)    Funds will be released for each disbursement by Escrow Agent when:

     1.  Borrower submits a draw request on the approved form for 100% completed work;

     2.  Work has been inspected and approved by the designated inspector;

     3.  If requested, receipts for labor and/or materials, and/or lien waivers are submitted; and

     4.  Borrower is not in default of the loan agreement at such time.

(b)    **Special Provision:** Borrower must submit a Draw Request and/or communicate to Lender or to Stallion Funding, LLC an update on the property and improvements made thereof within 45 days from the time of this loan funding or at Lender's discretion this may be deemed a default to the loan agreement (due to inactivity) and an inspector may be sent to the subject property at Borrower's sole expense for a site inspection. In addition, if such default occurs, Borrower understands that he is fully responsible for the monthly interest payment (including monthly taxes and insurance) even if there is an Interest Carry account set up by Lender or its agent at the time of closing. Borrower understands that the monthly payments will NOT be paid from the Interest Carry account until improvements satisfactory to Lender or its agent are once again made to the Property.

(c)    Funds are to be released for each of the disbursements upon Escrow Agent receiving written and/or e-mail authorizations for the release of funds from Stallion Funding, LLC. **The Borrower's consent, agreement, authorization and/or signature shall <u>not</u> be required for the release of escrow funds by Escrow Agent upon receiving the authorizations from the representatives of Lender as stated above.**

   NOTE: All parties agree that no signatures will be required and that email communication alone is sufficient.

7.    This escrow is anticipated to end on or before 365 days from closing date. In the event that all funds are not used for repairs by such deadline or have not been disbursed by such deadline, whether due to work delays or due to disputes between the parties hereto, any remaining balance of the Escrow Funds shall be returned to Lender by Escrow Agent, without further notice to and/or consent or agreement from the Borrower. Borrower acknowledges that Escrow Agent shall return all Escrow Funds to Lender at the end of the 365 day period following the closing, and that such disbursement is not contingent upon written or verbal approval of the Borrower and Borrower shall have no recourse on Escrow Agent for releasing the balance of the Escrow Funds in accordance with this paragraph.

*Duties of Escrow Agent.*

8.    The Escrow Agent does not assume and shall not be under liability on account of performance or nonperformance of any party to the agreement.

*Adverse Claims.*

9.    In the event that Escrow Agent receives conflicting instructions from the representatives for the Lender and the Borrower, Escrow Agent shall be fully authorized and shall incur no liability whatsoever in refusing to comply with any disbursement instruction(s) from the Borrower and returning the Escrow Funds to the Lender.

10.    Escrow Agent may consult with legal counsel in the event of any dispute, questions as to the construction of the foregoing instructions, or Escrow Agent's duties hereunder, and Escrow Agent shall incur no liability and shall be fully protected in acting in accordance with the opinion and instructions of such counsel.

*Exculpation.*

11.    This Escrow Agreement shall be liberally construed in the interest of, and for the protection of, Escrow Agent. No implied covenants or obligations shall be enforceable against Escrow Agent. Any general language contained herein shall not be construed to be limited by specific language herein set forth.

12.    Escrow Agent is not a party to, and is not bound by or charged with notice of, any agreement or document out of which this Escrow Agreement may arise. Escrow Agent shall not be bound by any agreement to which it is not a party.

13.    Escrow Agent shall be protected in acting upon any notice, request, waiver, consent, receipt or other paper of document believed by Escrow Agent to be genuine and to be signed by the proper party or parties.

14.    Escrow Agent shall not be liable for any error of judgment or for any act done or step taken or omitted by it in good faith, or for any mistake of fact or law, or for anything which it may do or refrain from doing in connection herewith, except its own willful misconduct, and Escrow Agent shall have no duties to anyone except those signing this agreement.

15.    Escrow Agent shall not be responsible for any loss or delay occasioned by the closure or insolvency of the financial institution into which Escrow Agent deposited the Escrow Funds.

16.    Escrow Agent shall not be responsible for the dishonor of any check, money order, draft, negotiable instrument, or other financial document, received as Escrow Funds by Escrow Agent under this Escrow Agreement.

*Indemnity.*

17.    The parties hereto do hereby jointly and severally agree that Escrow Agent shall incur no liability whatsoever in connection with its good faith performance under this Escrow Agreement. The Parties do hereby jointly and severally release and waive any claims they may have against Escrow Agent which may result from this performance in good faith of its functions under this Agreement. Escrow Agent shall be liable only for loss or damage caused directly by its acts of gross negligence while performing as Escrow Agent under this agreement. Specifically, Escrow Agent shall have no liability for any loss, damage, costs, or attorney fees, resulting from a delay in the electronic wire transfer of funds, unless said loss is caused by the direct result of Escrow Agent's gross negligence.

18.    In the event that Escrow Agent performs any service not specifically provided hereinabove, or that there is any assignment or attachment of any interest in the subject matter of this escrow or any modification thereof, or that any controversy arises hereunder, or that Escrow Agent is made a party to, or intervenes in, any litigation pertaining to this escrow or the subject matter thereof, Escrow Agent shall be reasonably compensated therefor and reimbursed for all costs and expenses occasioned thereby, and the parties hereto agree jointly and severally to pay the same, to indemnify Escrow Agent against any loss, liability or expense incurred in any act or thing done by it hereunder, it being understood and agreed that Escrow Agent may interplead the subject matter of this escrow into any court of competent jurisdiction, and the act of such interpleader shall immediately relieve Escrow Agent of its duties, liabilities and responsibilities hereunder.

19.    The undersigned agree to save and hold harmless Escrow Agent from any liability arising under and as a result of this Escrow Agreement, and further agree that Escrow Agent may, at its option, require the receipt, release and authorization in writing of all parties before paying money or delivering or redelivering documents or property to any party or to third parties. Escrow Agent shall not be liable for any interest or other charges on the money held by it. The undersigned further agree that Escrow Agent shall have no liability whatsoever with respect to any unpaid bills and/or mechanic lien claims relating to the repair work to be performed on the property after closing.

*Additional Terms.*

20.  *Severability.* If part of this Agreement is adjudged invalid, the remaining parts are not affected.

21.  *Notices.* All notices under this agreement shall be in writing and shall be given to the Parties at the addresses specified herein. Notices shall be delivered to the recipient or mailed. Time periods related to mail notice begin when it is deposited in the United States mail properly addressed with sufficient first class (or better) postage to reach its destination. The place where notice is given under this section may be changed from time to time by the Party entitled to receive it in the same manner that notice is given. Notice given before a change is not invalidated by the change.

22.  *Entire Agreement.* The foregoing terms constitute the entire agreement between the parties and this agreement shall not be modified, changed or amended by any subsequent written or oral agreement unless agreed to in writing by Escrow Agent.

23.  *Governing Law.* This agreement shall be governed by the laws of the State of Texas.

Borrower                                         Lender

2020 MCGOWEN, LLC,                               STALLION TEXAS REAL ESTATE FUND, LLC
a Texas limited liability company

By: _____             By: _____
   Terry J. Fisher, Manager

Escrow Agent

Stallion Funding, LLC

By: _____

0010-119
LoBW/STALLION/2020McGowen.2020McGowen
BKW/gcm

Page 4 of 4

THE STATE OF TEXAS

COUNTY OF Harris

This instrument was acknowledged before me on the 12 day of October, 2015 by TERRY J. FISHER, Manager of 2020 McGowen, LLC

_____
Notary Public, State of Texas

2